# Thouron's Appeal.

A decree of the orphans' court dismissing a petition for the distribution, under the terms of the will, of a testator's estate, upon the ground that while petitioner was entitled to share in the rents, issues, and profits of the real estate during the lives of certain annuitants, the time for the vesting of his estate absolutely had not yet arrived, sustained upon the facts.

(Decided February 8, 1886.)

Appeal from a decree of the Orphans' Court of Philadelphia County dismissing a petition for distribution.    Affirmed.

Nicholas E. Thouron died December 24, 1866, leaving a will by which he devised all his real estate to trustees, with directions to let and demise the same, collect rents, pay charges, make repairs, etc., and divide the net income into two equal parts.

Out of one of these parts the trustees were to pay to Margaret Thouron, wife of his son Elisha Henry Thouron, the sum of $1,000 during her natural life or widowhood.    Upon her death or remarriage, the said annuity was to "cease and fall into the residue of said half of the net income."    As to the residue the trustees were to pay the same over to Elisha Henry Thouron, "for his own use, during all the term of his natural life."    Upon "the decease of Elisha Thouron, leaving his said wife living," the trustees were to pay over the residue "to all and every, the child and children of Elisha Henry Thouron who may be living at the time of his death, in equal shares, and to the children of such children of his who may be then dead, leaving children." "And from and after the death of the survivor of them, the said Elisha Henry Thouron and Margaret Thouron, his wife, the trust hereby created as to said one half of the estate shall cease, and one full equal half-part of the real estate hereby devised, together with the proceeds of any sales thereof which may have been made in the meantime, and all accumulations of income

NOTE.—When a will devises certain real estate in trust for a daughter for life, and in case of her death without issue or issues of her children then revertible to my right heirs, it was held that his other children took no interest, and that an action of ejectment could not be maintained by them during her life.  It was contingent, and would only pass upon her decease "without children or their issue surviving her."  Peirce v. Hubbard, 152 Pa. 18, 25 Atl. 231.  A petition asking to have trust ended was dismissed for like reason, in McKee's Estate, 198 Pa. 255, 47 Atl. 993.

shall immediately become vested in such children or grandchildren (being children of deceased children) of Elisha Henry Thouron as may be living at the time of the death of the survivor of them, the said Elisha Henry and Margaret Thouron, his wife, their heirs and assigns, forever, etc." "But if it should happen at the time of the death of the survivor of them, the said Elisha Henry Thouron and Margaret Thouron, his wife, there should be no children or grandchildren of the said Elisha Henry Thouron then living," the said equal half part was to vest in the issue of testator's other son, Emanuel Augustus Thouron, or if the latter left no issue, then it was to vest in the heirs at law of testator.

Elisha Henry Thouron died October 16, 1880. His widow, Margaret Thouron, is still living, as are also his six children, all of them of full age. One of these children is the petitioner.

Out of the other of these parts the trustees were to pay unto Hannah Neilson Thouron, wife of testator's son, Emanuel Augustus Thouron, the sum of $1,000 during her natural life or widowhood. Upon her death or remarriage the said annuity was to "cease and fall into the residue of the said one half of the net income." As to said residue the trustees were to pay the same over to Emanuel Augustus Thouron, "for his own use during all the term of his natural life." Upon "the decease of Emanuel Augustus Thouron, leaving his wife surviving," the trustees were to pay over the residue "to all and every, the child and children of Emanuel Augustus Thouron, who may be living at the time of his death, in equal shares, and to the children of such of his children as may be then dead leaving children."

"And from and after the death of the survivor of them, the said Emanuel Augustus Thouron and Hannah Neilson Thouron, his wife, the trust hereby created as to said one half of the estate last mentioned shall cease, and thereupon one full equal half-part of the estate hereby devised, together with the proceeds of any sales thereof which may have been made in the meantime, and all accumulations, shall immediately become vested in such children or grandchildren (being the issue of deceased children) of Emanuel Augustus Thouron, as may be living at the time of the death of the survivor of them, the said Emanuel Augustus Thouron and Hannah Neilson Thouron, his wife, their heirs and assigns forever."

"But if it should happen that, at the time of the death of the

survivor of them, the said Emanuel Augustus Thouron and Hannah Neilson Thouron, his wife, there should be no children or grandchildren of Emanuel Augustus Thouron then living," the said equal half part was to vest in the issue of testator's other son, Elisha Henry Thouron; or, if the latter left no issue, then it was to vest in the heirs at law of the testator.

Emanuel Augustus Thouron died October 8th, 1879. His widow, Hannah Neilson Thouron, is still living. They never had any children.

The appellant claims that, upon the death of Emanuel Augustus Thouron without issue, one half of the corpus of testator's estate was vested in the issue of Elisha Henry Thouron, and became distributable at once after setting aside so much thereof as would secure the widow of Emanuel Augustus Thouron her said annuity of $1,000; also that, upon the death of Elisha Henry Thouron, the other one half of the principal of testator's estate became distributable at once, after setting aside so much thereof as would secure to the widow of Elisha Henry Thouron (petitioner's mother) her annuity of $1,000.

The answer of the trustees is that the said shares are not distributable until after the deaths of the said Hannah Neilson Thouron and Margaret Thouron respectively.

The opinion of the lower court was delivered by PENROSE, J., as follows:

While the petitioner has undoubtedly a present interest in the real estate of the testator, which entitles him to a share of the rents, issues, and profits during the lives of the annuitants, it is equally clear that his interest in the corpus would cease and become devested should his death occur before the time at which, under the terms of the will, it becomes absolutely vested. The limitation is, to such children or grandchildren (being issue of deceased children) of the testator's sons 'as may be living at the time of the death of the survivor' of his sons and their wives, 'their heirs and assigns forever,' etc. Until the period thus appointed, it cannot be known whether the persons entitled will be the children or grandchildren of the sons; and while the motive in postponing the distribution after the death of the sons may not be apparent, we are confined to what the testator has said, and have nothing to do with the reasonableness or unreasonableness of the provision. Biddle's Appeal, 39 Phila. Leg. Int. 420

A similar question was presented in Callahan's Estate, 36 Phila. Leg. Int. 184, where the authorities are carefully considered and discussed.

The petitioner appealed.

*John H. Campbell,* for appellant.—The act of February 23, 1853, § 1 (Purdon's Digest, 451, pl. 98), provides a method of securing the annuitants by setting apart so much of the estate as may be necessary for the purpose.

The annuitants have no interest whatever in testator's estate beyond the value of their annuities, and, if these annuities be secured, they will receive everything to which they are entitled under the will. See, Thouron's Estate, 11 W. N. C. 285; Washington's Estate, 75 Pa. 107; Stille's Appeal, 4 W. N. C. 42; Carson v. Rutter, 12 W. N. C. 161.

It could not be the intent of the testator that the estate was to remain in the hands of the trustees, simply to see that the annuities were paid. No accumulations could be made. Where is the reason for it so remaining? Of course the testator had a right to lawfully dispose of his own as he chose. Where he has such a right, the court will not inquire into the wisdom or the folly of the disposition. Bainbridge's Appeal, 97 Pa. 482; Biddle's Appeal, 99 Pa. 525.

The provision in the will, that, upon the remarriage of the son's widow, the annuity should cease, also helps to determine the intent of the testator to be not a provision for the widow, and making that provision a charge upon the devise to his son's issue, but merely a grant of a small sum per year to her, as his son's widow.

The decision in Biddle's Appeal, 99 Pa. 525, rests upon a manifest intention of the testator that the estate should remain in the trustee's hands and accumulate until such time as it could be handed over in one great bulk to a charitable institution, after all other parties in interest were dead, and the estate had been completely settled.

So, in Barger's Appeal, 12 W. N. C. 341, the intent was perfectly clear, that the limit of time fixed was intended to fix the vesting of the estate, the testator declaring "that, until then" no interest in his estate should vest. See also Huber's Appeal, 80 Pa. 348; Dodson v. Ball, 60 Pa. 492, 100 Am. Dec. 586.

*Dallas Sanders* and *W. W. Montgomery,* for appellees.—The general rule of law as laid down by Justice Williams in McClure's Appeal, 72 Pa. 414, and cited with approval by Justice Sharswood in Chess's Appeal, 87 Pa. 364, 30 Am. Rep. 361, is, that "a legacy is to be deemed vested or contingent just as the time when it is to take effect shall appear to be annexed to the gift or the payment of it."

Where there is an antecedent absolute gift independent of the direction and time and payment, the legacy is vested; but where there is no substantive gift, and it is only implied from the direction to pay, the legacy is contingent, unless from particular circumstances or the whole face of the will, a contrary intention is to be collected.  2 Wms. Exrs. 1059.

Justice Strong in McBride v. Smyth, 54 Pa. 245, says: "The rule of legal construction, as well as the testamentary intent in such cases, is well stated in Smith on Executory Interests, p. 281.  It is this: 'Where real or personal estate is devised or bequeathed to such children, or to such child or individuals as shall attain a given age  .  .  .  or be living at a certain time, without any distinct gift to the whole class preceding such restrictive description, so that the uncertain event forms part of the description of the devisee or legatee, the interest so devised is necessarily contingent on account of the person.' " See also Fairfax's Appeal, 103 Pa. 166; List v. Rodney, 83 Pa. 483.

Where there is an express direction by the testator that the estate shall vest at a particular time, the language will "preclude the idea that an estate vested in any child prior to that time." See opinion of Mr. Justice Mercur in Barger's Appeal, 100 Pa. 239.

Per Curiam:

The learned judge gave a correct construction to the will in question.  The appellant is entitled to share in the rents, issues, and profits of the estate during the lives of the annuitants; yet, if his death should occur before the estate vests absolutely, his interest in the corpus would cease.  It follows that the shares are not distributable until after the death of both Hannah Neilson Thouron and Margaret Thouron.

Decree affirmed and appeal dismissed, at the costs of the appellant.